UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA T. ESCH,
*as Personal Representative
of the Estate of Steven Stiles,
Deceased*,

       Plaintiff,                            Case No. 1:13-cv-478

v.                                             HON. JANET T. NEFF

COUNTY OF KENT et al.,

       Defendants.
_____/

**OPINION**

Plaintiff filed this civil rights action seeking recovery related to the death of Steven Stiles while he was detained at the Kent County Jail. The matter is before the Court on a Motion for Summary Judgment by Defendants Kent County; Sheriff Lawrence Stelma; Corizon Health, Inc.; Nasim Yacob, M.D.; Jim McFadden, R.N.; Minerva Booker, R.N.; Esther West, R.N.; Claire Everson, L.P.N.; and Doris Lemmen, L.P.N. (Dkt 306); and a separate Motion for Summary Judgment by Defendant David Sova, D.O. (Dkt 310). After full briefing and review, the Court concludes that oral argument is unnecessary to resolve the Motions. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court grants both Motions.

**I. Facts**

Pursuant to this Court's dispositive motion procedures, the parties have stipulated to the following Joint Statement of Facts (JSF) (Dkt 305) for purposes of the motion:

In the early morning hours of May 31, 2011, the Grand Rapids Police Department arrested Stephen Stiles and took him to the Kent County Correctional Facility for booking. At approximately 8:10 p.m., medical staff attempted to deliver what would have been Mr. Stiles' first dose of Dilantin since his arrival at the jail; however, Mr. Stiles did not appear when called for his medication. Mr. Stiles was unresponsive. Mr. Stiles' pronounced time of death was 8:41 p.m. on May 31, 2011.

Three counts in Plaintiff's Second Amended Complaint (Dkt 208) remain at issue:

    Count I    42 U.S.C. § 1983—Failure to Supervise/Train as to the County of Kent and Sheriff Lawrence Stelma;

    Count II    42 U.S.C. § 1983—Failure to Supervise/Train as to Corizon Health, Inc. and Dr. Nasim Yacob, M.D.

    Count III    Violation of Civil Rights Pursuant to the 8th and/or 14th Amendments to the United States Constitution—Defendants Rodriguez, Sullivan, Dock, McFadden, R.N., Booker, RN, Everson, LPN, West, R.N., Lemmen, LPN, and Dr. Sova, M.D.

Defendants Rodriquez, Sullivan and Dock have been dismissed by stipulation and are no longer Defendants in this case. The remaining ten Defendants move for summary judgment of all claims.

## II. Legal Standards

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a

genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess*, 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The ultimate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sierra Brokerage Servs.*, 712 F.3d at 327 (quoting *Anderson,* 477 U.S. at 251-52).

### III. Kent County and Corizon Defendants' Motion

Defendants Kent County, Sheriff Lawrence Stelma, Corizon Health, Inc., Nasim Yacob, M.D., and all individual Defendants except Dr. Sova, move for summary judgment of all remaining claims against them: (1) 42 U.S.C. § 1983 Failure to Train/Supervise against Kent County and Sheriff Lawrence Stelma (Count I); (2) 42 U.S.C. § 1983 Failure to Train/Supervise against Corizon Health and Nasim Yacob, M.D. (Count II); and (3) Violations of 42 U.S.C. § 1983, Deliberate Indifference to Serious Medical Needs (Count III).

As a general matter, "'[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (citations omitted). The legal standards differ for claims against municipal/governmental entities and the claims as to the individual Defendants. The Court will address the claims accordingly.

"'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eight[h] Amendment's prohibition

against cruel and unusual punishment. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Although the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well." *Miller*, 408 F.3d at 812 (citations omitted).

"The Supreme Court has adopted a mixed objective and subjective standard for ascertaining the existence of deliberate indifference …." *Id.* "The objective component of the test requires the existence of a 'sufficiently serious' medical need." *Id.* "The subjective component, by contrast, requires a showing that the prison official possessed 'a sufficiently culpable state of mind in denying medical care.'" *Id.* at 813 (citations omitted). "Deliberate indifference requires a degree of culpability greater than mere negligence, but less than 'acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

### A. Plaintiff's 42 U.S.C. § 1983 *Monell* Claims (Counts I and II)

To prevail on a § 1983 claim against a municipality or local government, the plaintiff must show that the alleged violation of his federal rights was caused by a municipal policy or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

"There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas*, 398 F.3d at 429. Plaintiff's complaint and her response to the motion frame the Count I and Count II claims as a "failure to train/supervise"; however, Plaintiff's argument bases these claims solely on an alleged "official policy of the jail at the time in question [that] required that even life sustaining medication only be supplied within 24 hours of verification" (Dkt 307 at PageID.2554). Plaintiff appears to conflate two separate bases for liability. Regardless, as Defendants argue, Plaintiff has failed to establish a claim against Kent County, Sheriff Lawrence Stelma, Corizon Health, Inc., and Nasim Yacob, M.D., based on either an alleged failure to train/supervise or an alleged unconstitutional policy, practice or procedure.

A plaintiff asserting a § 1983 claim on the basis of municipal custom or policy must (1) identify the policy, (2) connect the policy to the municipality, and (3) show that the particular injury at issue was incurred because of the execution of that policy. *Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). "[S]uch a showing requires demonstrating a 'direct causal link' between official action and the deprivation of rights, such that the 'deliberate conduct' of the governmental body is the 'moving force' behind the alleged injury. *Waters v. City of Morristown*, 242 F.3d 353, 362 (6th Cir. 2001) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404

5

(1997)); *see also Graham*, 358 F.3d at 383. "Municipal liability cannot be based on the theory of respondeat superior." *Waters*, 242 F.3d at 362 (citing *Monell*, 436 U.S. at 691).

As noted, Plaintiff asserts her *Monell* claims based on the alleged jail policy that "required that even life sustaining medication only be supplied within 24 hours of verification" (Dkt 307 at PageID.2554). The jail policy states in relevant part: "Inmates entering the facility on prescription medica[t]ions will continue to receive meds in a timely fashion (within twenty-four hours of verification)" (Jt. Ex S., at PageID.2723).

Plaintiff states that Nurse Esther West, R.N., the charge nurse in the morning hours of May 31, 2011, testified that she was required to get Stiles his anti-seizure medication, Dilantin, within no more than 24 hours from verification. Further, Dr. Nasim Yacob, the medical director, testified that the policy of the jail at the time of Stiles' death was "to administer the medication within 24 hours" (Dkt 307 at PageID.2554). Plaintiff states that was the only policy in existence at the time concerning the timing of medication administration, and that the policy was the "moving force" behind the violation of Stiles' civil rights. Plaintiff states that West and the other medical staff "knew or should have known of the dangers of uncontrolled seizure activity," yet, relying upon the official policy, the medical staff believed that they could wait up to 24 hours before giving Stiles, or anyone similarly situated, the life-sustaining medications that had been prescribed (*id*. at PageID.2555). Thus, the adherence to the 24 hour policy led to the death of Stiles (*id.*).

Plaintiff's argument fails both factually and legally. First, the evidence fully establishes that medication can be sought and was administered in less than 24 hours when a need was demonstrated. Nurse West testified, however, that in Stiles' case, there was nothing to indicate that there was an emergency situation to get his "meds" right away, so as a result, she followed the

general policy. A number of witnesses testified likewise. The jail policy does not prevent the administration of medication sooner than 24 hours. Medical staff testified that the practice was to get an inmate/patient the medication as soon as possible considering the circumstances (*see, e.g.*, McFadden Dep., Jt. Ex. E at 17-18, PageID.2600). Here, there was nothing in Stiles' intake/medical chart to indicate an emergent situation. Defendants point out that in this case, Stiles would have received his medication less than 10 hours after verification (Dkt 308 at PageID.2755, citing Jt. Ex. D). Plaintiff has presented no evidence to show that Stiles' death occurred *because of* the execution of the policy or that the policy was the "moving force" behind the alleged injury. *See Graham*, 358 F.3d at 383.

Even if Plaintiff could overcome the deficiencies in this element of her claim, her *Monell* claims fail on other grounds. As Defendant argues, Plaintiff may not rely on an isolated incident to establish her *Monell* claims, but must show a pattern or repeated evidence of constitutional violations. Plaintiff must show that an injury of *constitutional* magnitude was suffered. *Ford*, 535 F.3d at 498.

"[T]o impose municipal liability, a § 1983 plaintiff 'must prove two basic elements: (1) that a *constitutional violation occurred*; and (2) that the County is responsible for that violation.'" *Id.* (citing *Graham*, 358 F.3d at 382 (internal quotation marks omitted)). "The policy in question [must meet] the stringent standard of deliberate indifference required to establish municipal liability in the first instance." *Ford*, 535 F.3d at 498 (citing *Miller*, 408 F.3d at 815-16 (explaining that a showing of deliberate indifference "typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures," and rejecting a claim against the county where it had a policy requiring officers "to contact the on-call doctor in the

event of a medical emergency," in part because the plaintiff had "failed to adduce independent evidence tending to show that such a policy was unreasonable")). *See also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005).

Here, Plaintiff has adduced no evidence to support a constitutional violation, i.e., any deliberate indifference by the County with respect to the injuries from the policy at issue, or any other instances of violations. Plaintiff's claims are based only on the instance of an alleged violation in this case. Such is insufficient to establish a claim of municipal liability under *Monell*.

Moreover, Plaintiff has not identified and has wholly failed to argue any claim based on a failure to train or supervise. Thus, any such claim fails.[1] *See Miller*, 408 F.3d at 816 (rejecting a failure-to-train theory of liability noting that the plaintiff offered no evidence beyond the facts of the case to show that the training and staffing policies were inadequate—there was no history of similar incidents, nothing to show that the County was on notice, and nothing to show that the County's failure to take meliorative action was deliberate).

Defendants are entitled to summary judgment of Counts I and II.

## B. Plaintiff's 42 U.S.C. § 1983 Claims against Defendants McFadden, Everson, Booker, West, and Lemmen (Count III)

Defendants argue that Plaintiff fails to show that any of the individual Defendants were deliberately indifferent to Stiles' serious medical needs. Having reviewed the record, and particularly the evidence cited by Plaintiff, the Court agrees.

---

[1] The failure to develop a cogent argument constitutes abandonment. *Burley v. Gagacki*, Nos. 14-2482/2542, 2016 WL 4434498, at *7 (6th Cir. Aug. 22, 2016) (citing *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014)).

As noted, a constitutional claim for the denial of medical care has objective and subjective components. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). This case hinges on the latter component. "The subjective component requires an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Id.* (citations omitted). "'[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* at 896 (quoting *Farmer*, 511 U.S. at 837).

"Deliberate indifference requires a degree of culpability greater than mere negligence, but less than 'acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Miller*, 408 F.3d at 813 (quoting *Farmer*, 511 U.S. at 835). "The prison official's state of mind must evince 'deliberateness tantamount to intent to punish.' 'Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.'" *Miller*, 408 F.3d at 813 (citation omitted). "Thus, 'an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.'" *Id.* (quoting *Farmer*, 511 U.S. at 838).

These standards are not met with respect to any of the five individual Defendants at issue. Plaintiff has failed to show that any Defendant had a sufficiently culpable state of mind in denying or delaying the administration of medication to Stiles. The testimony is invariably that there was no indication that Stiles' need for Dilantin was an emergency situation and if there had been some indication, the personnel would have taken steps to take the necessary measures to obtain it.

*Jim McFadden, R.N.*

At approximately 4:58 a.m., following Stiles' arrest, Nurse McFadden completed Stiles' intake screening based on the information Stiles provided, documenting his reported medical conditions and Dilantin prescription (McFadden Dep., Jt. Ex. E). At his deposition, McFadden acknowledged that Stiles had a serious medical condition. McFadden noted the information provided by Stiles on the medical screening form, including "Epilepsy - Last Seizure 2 Weeks Ago - Grand Mal. Dilantin"; Stiles' vital signs; and in response to whether he was "currently drunk or high," McFadden wrote "Buzzed" (Med. Screening Form, Jt. Ex. D). McFadden also noted that Stiles stated that he currently used alcohol "Occasionally" and that he denies that he had ever had any alcohol withdrawal concerns (*id.*). In accordance with policy and practice, McFadden appropriately provided the chart to the day shift nurse, Esther West, R.N., upon her arrival, for the necessary verification of the prescription and to obtain Stiles' medication. Contrary to Plaintiff's assertion, there is no evidence that McFadden "*knew* that Stiles needed immediate medical attention" (Dkt 307 at PageID.2555-2556, emphasis added). Thus, no evidence establishes that McFadden was aware of a serious medical need and disregarded it.

*Esther West, R.N.*

During her shift, around 10:40 a.m., Esther West, R.N., the first shift charge nurse, verified Stiles' medication as required through Walgreen's pharmacy, and she then placed Stiles' medical chart in the proper place for Dr. David Sova to review, so that he could order the prescription. As Plaintiff acknowledges, West testified that in her mind, Stiles' condition was not a medical emergency: West testified that her job was to make certain Stiles "got his medication within 24 hours" which she did, and "[t]here was no indication here showing me that he needed them sooner

than that" (West Dep., Jt. Ex. F at 34, PageID.2610).  Further, "[t]here [was] no indication that [she] needed to call the doctor right away," and there was no need to pull up his old records to see if Stiles was in jeopardy of a seizure at that time because the vital signs and the intake screening did not indicate "any urgent medical need" (*id.* at 34, 59-60, PageID.2610, 2613).  Nothing in this record establishes that West was aware of a serious medical need and disregarded it.

Plaintiff asserts that L.P.N. Minerva Booker testified that the first charge nurse should have verified the prescription and then called the doctor to get Stiles his "meds" as soon as possible.  However, Plaintiff mischaracterizes the record in this regard.  Booker's testimony related to hypothetical facts stated by Plaintiff's counsel, to which Booker indicated that Stiles should have his medication as soon as possible (Booker Dep., Jt. Ex. K at 32-34, PageID.2673-2674).  Regardless, any such testimony as to what "should" have been done does not establish the requisite deliberate indifference on the part of another defendant.

Similarly, Plaintiff asserts that Dr. Sova testified that if the charge nurse had told him that Stiles needed his medication right away, he would have ordered the "meds" and directed that they be given right away.  Again, such testimony, based on a hypothetical, is immaterial to the question of deliberate indifference on the part of Nurse West.  The question is whether West was aware of a serious medical need and disregarded it, not whether she should have been aware.

"'Mere negligence or malpractice is insufficient to establish an Eighth Amendment violation.'" *Ford*, 535 F.3d at 495 (citations omitted).  "Instead, '[a] prison official cannot be found liable ... for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

draw the inference.'"[2] *Id.* (quoting *Farmer*, 511 U.S. at 837). Plaintiff's claim of deliberate indifference fails as to Nurse West.

*Minerva Booker, R.N.; Doris Lemmen, R.N.; and Claire Everson, L.P.N.*

Plaintiff's deliberate indifference claims against these Defendants are even more tenuous and likewise fail. Plaintiff asserts that "[a]ll three of these individuals composed the 'second chance' to fix what those with the first chance, namely McFadden and West, failed to do" (Dkt 307 at PageID.2558). Plaintiff asserts that Booker was tasked with checking for orders from the doctor, and to see if any orders needed to be noted right away. She would have had Stiles' chart, with his orders for Dilantin 300 mg, twice a day, and she agreed that anyone entering the jail with a seizure condition should get his anti-seizure medication as soon as possible. Plaintiff again relies on Booker's response to hypotheticals. As Defendants point out, there is no evidence that Booker was actually aware of any medical need that Stiles had—or that she had any involvement in his medical care prior to his death.

Plaintiff asserts that it was Booker's responsibility to address a call from Deputy Rodriguez about the status of Stiles' Dilantin medication. However, the record does not establish who received the call from Deputy Rodriguez, and it consequently offers no support for a claim of deliberate indifference on the part of any Defendant. Rodriguez testified that Stiles came up and asked Rodriguez if he knew when he would receive his medication—the inquiry "was very casual" (Rodriguez Dep., Jt. Ex. H at 14, PageID.2637). He called and talked to someone to tell them that Stiles had asked about his medication, but he did not know with whom he spoke, merely that it

---

[2] Given this subjective standard, Plaintiff's reliance on her expert testimony as to what any particular Defendant "should have known" is misplaced.

would have been the floor nurse or the main medical office (*id.* at 15).  The fact that it was Booker's "responsibility" to address the call, even if established, adds nothing to Plaintiff's claim of deliberate indifference where there is no evidence that she received the call or that she deliberately disregarded a serious medical need.

Also, contrary to Plaintiff's assertion, no evidence supports any claim of deliberate indifference on the part of Nurse Everson on the grounds that she believes she was handed Stiles' chart, possibly told about Stiles' condition, and did not check with any doctor or check on Stiles (Dkt 307 at PageID. 2559).  Everson found Stiles unresponsive in his cell when she was making the medication round on the 3:00 to 11:00 p.m. shift on May 31 (Everson Dep., Jt. Ex. J at 68, PageID.2666).  As Defendants note, Everson proceeded in accordance with an order from a doctor for medication for Stiles.  Plaintiff's speculation about other actions she could have taken is immaterial on the facts presented.

Finally, as to Nurse Doris Lemmen, Plaintiff asserts that she was contacted by Deputy Rodiguez about Stiles' concerns, but she did nothing to ensure he got his anti-seizure medications.  There is no record evidence establishing these facts.  A video shows only that Nurse Lemmen and Deputy Rodiguez briefly acknowledged each other at one point at his desk, but Lemmen testified that she "had no idea who [Stiles] was" (Lemmen Dep., Jt. Ex. I. at 37, 58-60, PageID.2651-2652).

Plaintiff has failed to present any record evidence supportive of her claims of deliberate indifference against the individual Defendants.  Defendants are entitled to summary judgment.

### IV.  Defendant Sova's Motion

The sole claim against Defendant David Sova, D.O., is Deliberate Indifference to Serious Medical Needs under 42 U.S.C. § 1983 in Count III.  Dr. Sova asserts that he was not notified of the

medication verification until around or after 6:45 p.m.  He argues that he is entitled to summary judgment for the same reasons that Plaintiff's claims against the other individual Defendants fail—because there is no evidence to support the allegation that he was aware of a serious medical need and disregarded it.

Plaintiff responds that even though Dr. Sova acknowledged that seizures are dangerous and can cause death, and that Stiles was on a heavy dose of Dilantin and had a higher risk of seizures, Dr. Sova "never took any steps to ensure that Stiles got his necessary medication" (Dkt 311 at PageID.2807).  Plaintiff notes that Dr. Sova was the physician responsible for the jail on May 31, 2011.  Plaintiff asserts that Dr. Sova testified that if Stiles did not get his anti-seizure medication in the morning, as prescribed, then he should have got it promptly in the afternoon, as it was an emergent situation, yet Dr. Sova did not mark the order for Dilantin as "stat."  The record does not support this assertion; Dr. Sova's conclusion was based on a hypothetical in which other medical staff had raised concerns about Stiles' situation and a more specific need for medication directly to Dr. Sova.  This did not occur.  Nonetheless, Plaintiff argues that Dr. Sova's failure to take any action to ensure that Stiles got his medication "emergently," is evidence of deliberate indifference.

No evidence cited by Plaintiff establishes "deliberate indifference" on the part of Dr. Sova.  Regardless of Dr. Sova's responses to hypotheticals posed by Plaintiff's counsel, nothing in the record establishes that he was aware that Stiles' need for medication involved any emergency or required immediate action.  Dr. Sova testified, and the record evidence confirms, that Stiles' chart was not flagged as a "must see" patient, nor did it indicate that a Dilantin order was needed immediately (*See* Sova Dep., Jt. Ex. G at 31, PageID. 2623).

14

To the extent that the evidence establishes that anyone, including Dr. Sova, may have been negligent in determining or charting an emergency situation with respect to Stiles' medication, such evidence does not make out a § 1983 claim of deliberate indifference. Mere negligence or malpractice is insufficient to establish a claim of deliberate indifference. *Ford*, 535 F.3d at 495. "A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Accordingly, Dr. Sova is entitled to summary judgment.

## V.  Conclusion

The Court acknowledges the unfortunate circumstances of Stiles' death while in custody at the Kent County Jail. However, on the record presented, Plaintiff's claims against Defendants under 42 U.S.C. § 1983 fail. Defendants are entitled to summary judgment of all remaining claims, and their motions will be granted accordingly.

An Order and Judgment will enter consistent with this Opinion.


Dated: September 27, 2016                             /s/ Janet T. Neff
                                                                             JANET T. NEFF
                                                                             United States District Judge